1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10
11
12  WRITERS GUILD OF AMERICA,   )   CV 14-05828 RSWL (AJWx)
    WEST, INC.; MARK DISTEFANO; )
13  and GUINEVERE TURNER,       )   **ORDER re: JUDGMENT**
                                )   **CREDITORS' MOTION TO ADD**
14          Plaintiffs,         )   **MYRIAD PICTURES AND KIRK**
                                )   **D'AMICO AS JUDGMENT**
15      v.                      )   **DEBTORS** [24]
                                )
16  BTG PRODUCTIONS, LLC,       )
                                )
17                              )
            Defendant.          )
18                              )
                                )
19  _____)

20      Currently before the Court is Plaintiffs' Motion to
21  Add Myriad Pictures and Kirk D'Amico as Judgment
22  Debtors [24], filed October 21, 2015.  This Action
23  stems from a dispute over an arbitration award between
24  Plaintiff Writers Guild of America West, Inc. ("Guild")
25  and Defendant BTG Productions, LLC ("Defendant").
26  Currently before the Court is Plaintiffs the Guild,
27  Mark DiStefano ("Stefano"), and Guinevere Turner's
28  ("Turner") (collectively "Plaintiffs") Motion to Add

                                1

Myriad Pictures and Kirk D'Amico as Judgment Debtors [24] ("Motion").

In the present Motion, the Guild seeks to add judgment debtors so that it can collect on its Judgment against Defendant, which was awarded as a result of default in a prior arbitration proceeding.  Upon consideration of all relevant papers before this Court, this Court should DENY Plaintiffs' Motion [24].  For the reasons discussed below, this Court **DENIES** Plaintiffs' Motion.

### I.   BACKGROUND

**A.   <u>Factual Background</u>**

Plaintiff the Guild is a labor organization within the meaning of 29 U.S.C. § 152(5), with its principal place of business in Los Angeles, California.  Compl. ¶ 1.  Plaintiffs Stefano and Turner are members of the Guild.  <u>Id.</u>  Defendant is a California corporation and an employer within the meaning of 29 U.S.C. § 152(a).  <u>Id.</u> at ¶¶ 4-6.  Third Party Myriad Pictures ("Myriad") is an organization of unknown entity type.  Third Party Kirk D'Amico ("D'Amico") is an individual and producer of the motion picture at issue, titled "Breaking the Girl" (the "Film").

At all relevant times, the Guild and Defendant have been parties to the Writers Guild of America Theatrical and Television Basic Agreement ("MBA"), an industry-wide collective bargaining agreement between the Guild and various employers in the motion picture and

television industry.  _Id._ at ¶ 9.  Article 10 of the
MBA calls for the submission of disputes to
arbitration, including disputes over failure to pay
compensation due to credited writers and to make
required contributions on behalf of writers to the
Writers Guild-Industry Health Fund and the Producer-
Writers Guild of America Pension Plan (collectively
"the Plans").  _Id._ at ¶ 10.

In 2012, a dispute arose between Plaintiffs and
Defendant concerning Defendant's failure to pay
compensation owed in connection with the Picture to
writers DiStefano and Turner (collectively the
"Writers").  _Id._ at ¶ 11.  On June 6, 2013, the Guild
served Defendant with a Notice of Claim Submitted to
Arbitration and Claim, outlining the allegations
supporting the claim that Defendant failed to pay
certain compensation owed to the Writers and failed to
make the attendant contributions to the Plans.  _Id._ at
¶ 12.  The arbitration hearing was held on February 12,
2014.  _Id._ at ¶ 15.  Defendant failed to appear at the
hearing and had advised counsel for the Guild by phone
a few days before the hearing that it did not intend to
appear.  _Id._  On February 12, 2014, the arbitrator
entered the Award and judgment against Defendant,
requiring Defendant to pay Plaintiffs over $300,000
relating to credit bonus provisions in writers'
contracts for the Picture.  _Id._ at ¶ 16.  On February
14, 2014, the Guild served the Award on Defendant,

1   which has refused and continues to refuse to comply
2   with the terms of the Award.  Id. at ¶ 17.

3        On July 25, 2014, Plaintiffs filed a Complaint to
4   confirm an arbitration award against Defendant [1].  On
5   February 3, 2015, this Court confirmed the Award and
6   entered judgment against Defendant [23].  Defendant has
7   since failed to pay on the judgment entered against it.
8   Mot. 3:7-8.  The Guild now seeks to add judgment
9   debtors Myriad and D'Amico, pursuant to alter ego and
10  piercing the corporate veil doctrines, to collect on
11  its judgment against Defendant.  Id. at 3:9-12.

12  **B.  Procedural Background**

13       On July 25, 2014, Plaintiffs filed a Complaint [1]
14  against Defendant to confirm the arbitration award.  On
15  September 2, 2014, this Court issued an Order to Show
16  Cause as to why the case should not be dismissed for
17  lack of prosecution [9].  On September 9, 2014,
18  Plaintiffs filed an application for Clerk to Enter
19  Default [11] against Defendant.  On September 12, 2014,
20  Default [14] was entered.  On October 30, 2014,
21  Plaintiffs filed a Motion for Default Judgment [17]
22  against Defendant.  On February 3, 2015, this Court
23  issued a Judgment [23], granting Plaintiffs' request
24  for default judgment accordingly to the terms set forth
25  in the Award.  On October 21, 2015, Plaintiffs filed
26  their Motion to Add Judgment Debtors [24].  D'Amico's
27  Opposition [27], Myriad's Opposition [29], and
28  Plaintiffs' Reply [33] were timely filed.

1          **II.   DISCUSSION**

2     **A.   Legal Standards**

3          1.   <u>Motion to Add Judgment Debtors</u>

4          Federal Rules of Civil Procedure, Rule 69(a)

5     authorizes federal courts to enforce a money judgment

6     by a writ of execution, unless the court directs

7     otherwise.   The procedure on execution follows the

8     procedure of the state where the state is located, but

9     a federal statute governs to the extent it applies.

10    <u>See</u> Fed. R. Civ. Proc. 69(a); <u>see also</u> <u>Agit Global,</u>

11    <u>Inc. v. Wham-O, Inc.</u>, 2014 WL 1365200 (C.D. Cal. Apr.

12    7, 2014); <u>Bank of Montreal v. SK Foods, LLC</u>, 476 B.R.

13    588, 597 (N.D. Cal. 2012).   The Ninth Circuit has held

14    that Rule 69(a) "empowers federal courts to rely on

15    state law to add judgment-debtors under Rule 69(a),

16    which 'permits judgment creditors to use any execution

17    method consistent with the practice and procedure of

18    the state in which the district court sits.'"   <u>In re</u>

19    <u>Levander</u>, 180 F.3d 1114, 1120-21 (9thCir. 1999) (citing

20    <u>Cigna Property & Cas. Ins. Co. v. Polaris Pictures</u>

21    <u>Corp.</u>, 159 F.3d 412, 421 (9th Cir. 1998)).

22         California Code of Civil Procedure section 187

23    grants courts the authority to amend a judgment to add

24    judgment debtors under the alter ego and veil piercing

25    doctrines.   <u>Misik v. D'Arco</u>, 197 Cal. App. 4th 1065,

26    1071 (2011) (citing <u>Postal Instant Press, Inc. v. Kaswa</u>

27

28

1  Corp., 162 Cal. App. 4th 1551, 1555 (2008)).[1]   This
2  Court has jurisdiction to enforce an arbitration award
3  issued in accordance with a collective bargaining
4  agreement pursuant to Section 301(a) of the Labor
5  Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).
6  Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v.
7  Madison Indus., Inc., of Ariz., 84 F.3d 1186, 1190 (9th
8  Cir. 1996); Textile Worker v. Lincoln Mills, 353 U.S.
9  448, 456 (1957).
10 **B.**   **Analysis**
11      1.   Evidentiary Objections
12      Both Plaintiffs and third parties D'Amico and
13 Myriad make evidentiary objections, asserting
14 various portions of proffered declarations are
15 inadmissible evidence on the grounds of irrelevance,
16 lack of foundation, the best evidence rule, hearsay,
17 and speculation, amongst other grounds.   Judgment
18 Creditors' Evid. Objections, ECF No. 34; Myriad's Evid.
19 Objections, ECF No. 30; Third Party Kirk D'Amico's
20 Evid. Objections, ECF No. 28.
21
22      _____
23      [1]California Code of Civil Procedure section 187 is the
   catch-all provision that gives the court jurisdiction to use any
   suitable process or mode of proceeding in order to carry out its
24 jurisdiction, even if such means are not specifically provided
   for in the Code of Civil Procedure or any statute.   This section
25 is often used to amend judgments to add judgment debtors on the
   ground that they are an alter ego of the original judgment
26 debtor.   NEC Electronics, Inc. v. Hurt, 208 Cal. App. 3d 772,
   778-779 (1989).   "This is an equitable procedure based on the
27 theory that the court is not amending the judgment to add a new
   defendant but is merely inserting the correct name of the real
28 defendant."   Id. at 778.

1    Plaintiffs object to the Declaration of Kevin
2    Forester ("Forester Decl.") and the Declaration of Kirk
3    D'Amico ("D'Amico Decl."), submitted in support of
4    Myriad and D'Amico's Oppositions to the present Motion.
5    This Court finds that "[t]o the extent that the Court
6    relied on objected-to evidence, [the Court] relied only
7    on admissible evidence" and therefore, this Court
8    **OVERRULES** Plaintiffs' objections [34].  <u>Caldwell v.</u>
9    <u>City of Selma</u>, No. 1:13-cv-00465-SAB, 2015 WL 1897806,
10   at *2 n.2 (E.D. Cal. Apr. 16, 2015); <u>see also</u> <u>Capital</u>
11   <u>Records, LLC v. BlueBeat, Inc.</u>, 765 F. Supp. 2d 1198,
12   1200 n.1 (C.D. Cal. 2010).
13        Myriad and D'Amico proffered almost identical
14   evidentiary objections in which the parties object to
15   the Declaration of Heather Pearson ("Pearson Decl.")
16   and the Declaration of Valerie Kordisch ("Kordisch
17   Decl.").  As to Myriad and D'Amico's objections, this
18   Court finds that the statements objected to are
19   independently evidenced by the accompanying exhibits,
20   and therefore the Court need not rely on the statements
21   proffered.  Because the Court need not rely on the
22   statements in the Pearson and Kordisch Declarations to
23   determine the present matter, but can instead refer to
24   the accompanying exhibits, D'Amico and Myriad's
25   objections are denied as **MOOT**.  <u>See</u> <u>Henson Beverage Co.</u>
26   <u>v. Vital Pharm., Inc.</u>, No. 08-CV-1545-IEG (POR), 2010
27   WL 1734960, at *3 (S.D. Cal. Apr. 27, 2010).
28        2.  <u>Plaintiffs' Motion is Timely</u>

1
2
3

      a.  *The statutes of limitations cited by*
          *Myriad and D'Amico are inapplicable to the*
          *present Action.*

4   This Court finds that the six-month statute of
5   limitations period derived from the National Labor
6   Relations Act ("NLRA") section 10(b), cited by D'Amico
7   and Myriad in their respective Oppositions, is
8   inapplicable in the present case.  Myriad Opp. 10:18-
9   11:3; D'Amico Opp. 2:17-3:8.

10  The Supreme Court has held that the six-month NLRA
11  § 10(b) statute of limitations applies when the claim
12  at issue "has no close analogy in state law."
13  <u>DelCostello v. International Broth. of Teamsters</u>, 462
14  U.S. 151, 169-170 (1983).[2]  The Supreme Court noted,
15  however, that a state statute of limitations may
16  instead apply "if state law were the only source
17  reasonably available for borrowing, as it often is."
18  <u>Id.</u> at 169.  The Court further noted: "We stress that
19  our holding today should not be taken as a departure
20  from propr practice in borrowing limitations periods
21  for federal causes of action, in labor law or
22  elsewhere.  We do not mean to suggest that federal
23  courts should eschew use of state limitations period
24  anytime state law fails to provide a perfect analogy."

25

26  [2]The question in <u>DelCostello</u> was what limitation period
    should apply to a federal action against a union for breach of
27  the duty of fair representation.  <u>Id.</u>  The Court found that a
    duty of fair representation claim "has no close analogy in state
28  law," and thus held that it was appropriate to "borrow" the six-
    month limitations period under NLRA section 10(b).

1    <u>Id.</u> at 171.

2         In the present case, state law provides the grounds

3    for Plaintiffs' claim, and additionally provides the

4    applicable statute of limitations.  Plaintiffs seek to

5    add Myriad and D'Amico as judgment debtors.  Pursuant

6    to Federal Rule of Civil Procedure Rule 69(a), a

7    federal court must utilize state procedures regarding

8    the execution of judgments when available.[3]  Here,

9    California Code of Civil Procedure section 187 is the

10   applicable state law for executing a money judgment,

11   and it is accompanied by a statute of limitations.

12   Section 187 permits courts to amend a judgment to add

13   additional judgment debtors "within a reasonable time."

14   <u>In re Levander</u>, 180 F.3d 1114, n.10 (9th Cir. 1999).

15   Thus, in the present case, Plaintiffs' claim is

16   governed by the statute of limitations provided by

17   California Code of Civil Procedure section 182, not

18   NLRA section 10(b).

19        b.   Plaintiffs' moved to add judgment debtors

20             within a "reasonable" time.

21        As discussed above, a motion to add a judgment

22   debtor governed by Rule 69(a) and section 187 must be

23   made "within a reasonable time."  <u>In re Levander</u>, 180

24   F.3d 1114, n.10.  The Ninth Circuit has found that a

25

26        [3]<u>See</u> Fed. R. Civ. Proc. 69(a) (providing, in part: "A money
     judgment is enforced by a writ of execution . . . . The procedure
27   on execution – and in proceedings supplementary to and in aid of
     judgment or execution - must accord with the procedure of the
28   state where the court is located, but a federal statute governs
     to the extent it applies.")

similar period of delay, after which a party moved to add judgment debtors, was "reasonable." In <u>Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.</u>, the Ninth Circuit confirmed that a seven and one-half month delay between the relevant court order and the motion to add judgment debtors was "reasonable." 159 F.3d 412, 421 (9th Cir. 1998).

In the present case, Plaintiffs waited eight months after the arbitrator's entry of Judgment before bringing this Motion. This Court entered Judgment against Defendant on February 3, 2015 [23]. In October 2015, when it became clear the moving parties would not receive payment, Plaintiffs filed the present Motion to add Myriad and D'Amico as judgment debtors. Given the facts presented, this Court finds that Plaintiffs' eight month delay in bringing this Motion is "reasonable" under the Ninth Circuit's standard, and is thus timely.

c.   Plaintiffs' Motion is timely in Accordance with the MBA.

Article 10.A.2 of the Writers Guild of America 2011 Minimum Basic Agreement ("MBA") states, in part: "Proceedings for grievance (or arbitration, to the extent a party is required to initiate arbitration without invoking a grievance proceeding) of a claim . . . shall be commenced no later than eighteen (18) months after the party bringing the grievance or arbitration proceeding . . . has obtained knowledge of the facts

1   upon which the claim is based." Forester Decl. ¶ 10,
2   Ex. A.

3       The Court, not the arbitrator, has the ability to
4   add judgment debtors. <u>Hall, Goodhue, Haisley & Barker,</u>
5   <u>Inc. v. Marconi Conf. Center Bd.</u>, 41 Cal. App. 4th
6   1551, 1555 (1996). An arbitrator is foreclosed from
7   doing so. <u>Id.</u> As such, Plaintiffs could not have
8   moved to add judgment debtors until the conclusion of
9   the arbitration proceeding, after learning that
10  Defendant would not fulfill the arbitrator's Judgment,
11  and upon motion to this Court. An eight month period
12  is well within the eighteen months allowed for in the
13  MBA. Accordingly, the Court finds Plaintiffs' Motion
14  is timely and properly filed in accordance with Article
15  10.A.2 of the MBA.

16          d.   Plaintiffs' Motion is not barred by
17               laches.

18      "Laches is an equitable time limitation on a
19  party's right to bring suit," which is "derived from
20  the maxim that those who sleep on their rights, lose
21  them." <u>Kling v. Hallmark Cards, Inc.</u>, 225 F.3d 1030,
22  1036 (9th Cir. 2000). "The question of laches does not
23  depend, as does the statute of limitation, upon the
24  fact that a certain definite time has elapsed since the
25  cause of action accrued, but whether, under all the
26  circumstances of the particular case, plaintiff is
27  chargeable with a want of due diligence in failing to
28  institute proceedings before he did." <u>Townsend v.</u>

<u>Vanderwerker</u>, 160 U.S. 171, 186 (1895).  To prevail on a defense of laches, a defendant must prove both: (1) an unreasonable delay by plaintiff in bringing suit, and (2) prejudice to himself.  See <u>Couveau v. American Airlines, Inc.</u>, 218 F.3d 1078 (9th Cir. 2000).  In considering whether a plaintiff's delay was unreasonable, courts consider: (1) the length of the delay, measured from the time the plaintiff knew or should have known about his or her potential cause of action, and (2) whether the plaintiff's delay was reasonable, including whether the plaintiff has proffered a legitimate excuse for the delay.  See <u>Jarrow Formulas, Inc. v. Nutrition Now, Inc.</u>, 304 F.3d 829, 838 (9th Cir. 2002).

This Court finds that Plaintiffs' Motion is not barred by laches.  Based on the evidence proffered by D'Amico and Myriad in their respective Oppositions, it is not apparent to this Court that Plaintiffs engaged in any unreasonable delay in bringing this Motion.  As to the matter of any resulting prejudice, Myriad merely contends that requiring it to pay the Judgment, with its accruing interest, would be "highly prejudicial" as "Plaintiffs have not offered any legitimate excuse for their delay in filing suit."  Myriad Opp. 11:11-21. The Court finds this argument unconvincing.  In fact, Plaintiffs have proffered a legitimate excuse for their eight month delay.  As mentioned above, Plaintiffs waited eight months from this Court's entry of Judgment

to file the present Motion because only at this time
did Plaintiffs learn that Defendant would be unable to
fulfill the Judgment against them.  Plaintiffs waited
until the resolution of the arbitration rather than
after the final writing of the credit determination for
the Picture because Plaintiffs and Defendant were
parties to an arbitration agreement, and thus
Plaintiffs were mandated to arbitrate their claim
against Defendant only.  Further, as discussed above,
only courts, not arbitrators can confirm and amend
judgments to add additional judgment debtors.
Accordingly, the Court finds that Plaintiffs' Motion is
not barred by laches.

       3.   <u>Plaintiffs' claim for "alter ego" liability</u>
            <u>against Myriad fails.</u>

     Under California law, the amendment of a judgment
to add additional judgment debtors is an equitable
procedure that binds new individual defendants where it
can be demonstrated that, in their capacity as alter
egos of the corporation, they in fact had control of
the previous litigation, and thus were virtually
represented in the lawsuit.  California Code of Civil
Procedure § 187 permits judgments to be amended to add
additional judgment debtors if two requirements are
met: "(1) [] the new party is the alter ego of the old
party *and* (2) [] the new party had controlled the
[earlier] litigation, thereby having had the
opportunity to litigate, in order to satisfy due

1   process concerns." <u>Katzir's Floor and Home Design,</u>

2   <u>Inc. v. M-MLS.com</u>, 394 F.3d 1143, 1148 (9th Cir. 2004)

3   (citing <u>In re Levander</u>, 180 F.3d 1114, 1121 (9th Cir.

4   1999)); <u>see also</u> <u>Triplett v. Farmers Ins. Exchange</u>, 24

5   Cal. App. 4th 1415, 1421 (1994)(noting that due process

6   considerations are in addition to, not in lieu of,

7   threshold alter ego issues). "Section 187 is premised

8   on the notion that the amendment 'is merely inserting

9   the correct name of the real defendant,' such that

10  adding a party to a judgment after the fact does not

11  present due process concerns." <u>Id.</u>  The alter ego

12  doctrine has developed under federal labor law "to

13  prevent employers from escaping their collective

14  bargaining obligations . . . ." <u>UA Local 343, United</u>

15  <u>Ass'n of Journeymen & Apprentices v. Nor-Cal Plumbing,</u>

16  <u>Inc.</u>, 48 F.3d 1465, 1471 (9th Cir. 1994).

17      The Ninth Circuit applies a two-step analysis to

18  establish alter ego liability under LMRA § 301.  <u>See</u>

19  <u>Carpenters v. Stevens</u>, 743 F.2d 1271, 1276 (9th Cir.

20  1984).  To prevail on a claim of alter ego liability

21  against Myriad, Plaintiffs must first show that there

22  is such a "unity of interest" between Myriad and

23  Defendant that the separate personalities of the

24  corporations no longer exist. <u>Katzir's</u>, 394 F.3d at

25  1149.  Second, the Plaintiff must show that inequitable

26  results will follow if the corporate separateness is

27  respected.  <u>Id.</u> Broadly, the court must consider

28  whether treating the acts as those of the corporation

14

alone will sanction a fraud, promote injustice, or
cause an inequitable result." <u>Misik v. D'Arco</u>, 197
Cal. App. 4th 1065, 1071 (2011).  "Conclusory
allegations of 'alter ego' status are insufficient to
state a claim.  A plaintiff must allege specifically
both of the elements of alter ego liability, as well as
facts supporting each." <u>Neilson v. Union Bank of
California, N.A.</u>, 209 F. Supp. 2d 1101, 1116 (C.D. Cal.
2003).

Among the factors to be considered in determining
alter ego liability are: (1) commingling of funds and
other assets of the two entities, (2) the holding out
by one entity that it is liable for the debts of the
other, (3) identical equitable ownership in the two
entities, (4) use of the same offices and employees,
and (5) use of one as a mere shell or conduit for the
affairs of the other.  <u>Wady v. Provident Life and
Accident Ins. Co. of America</u>, 216 F.Supp.2d 1060, 1066
(C.D. Cal. 2002).

"No one characteristic governs, but the courts must
look at all the circumstances to determine whether the
doctrine should be applied." <u>Sonora Diamond Corp v.
Superior Court</u>, 83 Cal.App.4th 523, 539 (2000).
However, "the mere fact of sole ownership and control
does not eviscerate the separate corporate identify
that is the foundation of corporate law." <u>Katzir's</u>,
394 F.3d at 1149.  Finally, "[a]lter ego is an extreme
remedy, sparingly used." <u>Sonora</u>, 83 Cal. App. 4th at

539.  The alter ego doctrine "focuses on whether there
is an attempt to avoid the obligations of a collective
bargaining agreement through a sham transaction or a
technical change in operation. . . The alter ego
doctrine applies in circumstances in which the
bargaining unit of the signatory company is effectively
the same as that of the non-signatory company."  Id. at
1277.

> a.  *Plaintiffs failed to establish a*
> *sufficient "unity of interest" between*
> *Myriad and Defendant.*
>
> i.  *Commingling of funds*

This Court finds that Plaintiffs have not shown
such a "unity of interest" between Myriad and Defendant
so as to find that the separate personalities of the
corporations no longer exist.  Katzir's, 394 F.3d at
1149.  First, upon review of the record, Plaintiff has
not proffered any evidence to show that there was a
commingling of Myriad and Defendant's funds.  In fact,
Myriad's Chief Financial Officer ("CFO") Kevin Forester
("Forester") contends in his declaration, "Myriad and
[Defendant] maintain separate corporate funds, records,
and assets.  There has never been any commingling of
funds or assets between Myriad and [Defendant]."
Forester Decl. ¶ 4.

> ii. *Shared liability*

This Court finds Plaintiffs have failed to put
forth any evidence showing that Myriad ever held itself

16

1  out as liable for the obligations of Defendant.[4]  On the

2  contrary, Forester declares: "Myriad has never

3  personally guaranteed any of [Defendant's]

4  obligations."  Id.  This Court finds that although

5  Myriad was heavily involved in producing the Film,

6  "Myriad was not the employer for [the Film].

7  [Defendant] was responsible for all employment matters,

8  costs, and revenues related to the Picture.  Myriad

9  also did not contribute any costs in connection with

10 [the Film]."  Id. at ¶ 5.  Myriad's involvement in the

11 Film stems from an agreement with Defendant to provide

12 various services relating to the Film, including post

13 production accounting, legal services, and "to act as a

14 sales representative for the Picture in the worldwide

15 marketplace."  Id. at ¶ 6.  It is clear from the

16 proffered declarations that such services were

17 specifically agreed to as part of a bidding process.

18 This Court should find that it does not necessarily

19 follow that, in providing these previously agreed to

20 services, Myriad held itself out as liable for

21 Defendant's obligations generally.  In fact, Plaintiffs

22 concede that D'Amico "chose not to sign Myriad as a

23 Guild company . . . and he refused to provide a

24 _____

25        [4]Rather, Plaintiffs make the following general allegations:
26 "The operations of [Defendant] and Myriad are related, as they
   use the same street address, phone numbers, and email addresses .
27 . . . The companies also operated in concert to produce [the
   Film], with [Defendant] taking responsibility for employment of
28 writers, and Myriad receiving production credit and holding
   ownership of the property."  Mot. 9:17-21.

standard guarantee that would obligate him to take
responsibility for [Defendant's] obligations."  Mot.
10:7-10.

                iii.        *Identical Equitable Ownership,*
                            *Shared Offices and Employees, Use*
                            *as a Shell Corporation*

     It is apparent from the record that Myriad and
Defendant do not have identical equitable ownership.
The record shows that D'Amico is the sole shareholder
of Defendant.  Kordisch Decl. ¶ 4, Exs. 6, 7.
However, there is no indication that D'Amico is the
sole shareholder of Myriad.  D'Amico is however
President of Myriad.  Further, although Myriad and
Defendant share the same mailing address, and some
email addresses and phone numbers, Kordisch Decl. Ex.
6, Plaintiffs do not show that Defendant and Myriad
share the same employees, besides sharing counsel on
certain matters.  Finally, Plaintiffs have not
adequately shown this Court that Defendant is a shell
corporation of Myriad.  Plaintiffs merely allege,
"Myriad is using [Defendant] to unjustly shield Myriad
from having to pay labor costs," without providing
convincing factual support for this contention.  Mot.
9:27-28.  Plaintiffs allege: "Myriad employees
negotiated the first three disputes that the Guild
brought regarding this movie, and coordinated payment
to the Guild on those disputes.  However, when they
realized that paying the credit bonuses were going to

add a significant expense to the project, and D'Amico nor counsel could convince the Guild to withdraw these claims, Myriad abandon[ed] [Defendant]. . . . Myriad's only chance to escape liability was to make the Guild try to collect from the empty shell of [Defendant]." Id. at 9:26-10:10.  This Court finds that such conclusory allegations, without factual support, are not persuasive and do not sufficiently show Defendant was a shell for Myriad corporation.

> b.  *Plaintiffs failed to show inequity would result if corporate separateness was respected*.

This Court finds Plaintiffs put forth insufficient evidence to show inequity would result if the corporate separateness of Defendant and Myriad were respected. Plaintiffs simply argue they would be unable to collect their Judgment against Defendant.  "The Guild should be able to collect its judgment from Myriad, because the facts above show it is the alter ego of [Defendant]." Mot. 10:11-12.

"California courts generally require some evidence of bad faith conduct on the part of defendants before concluding that an inequitable result justifies an alter ego finding." Neilson v. Union Bank of California, N.A., 290 F.Supp.2d 1101, 1117 (C.D. Cal. 2003)(citing Mid-Century Ins. Co. v. Gardner, 9 Cal. App. 4th 1205, 1213 (1992) ("The purpose of the doctrine is not to protect every unsatisfied creditor, but

rather to afford him protection, where some conduct
amounting to bad faith makes it inequitable, under the
applicable rule above cited, for the equitable owner of
a corporation to hide behind its corporate veil.")).
As discussed above, Plaintiffs have made broad
allegations of bad faith, but have not supported these
allegations with fact.  As noted above, "[c]onclusory
allegations of 'alter ego' status are insufficient to
state a claim.  A plaintiff must allege specifically
both of the elements of alter ego liability as well as
facts supporting each."  <u>Neilson</u>, 209 F. Supp. 2d at
1116.  As Plaintiffs provide no further support for
their contention that inequity would result, this Court
finds Plaintiffs have not met their burden.

      4.   <u>Myriad's due process rights would be violated</u>
          <u>by assigning "alter ego" status to it because</u>
          <u>it had no control over the proceeding</u>
          <u>litigation and arbitration.</u>

Pursuant to California Code of Civil Procedure
section 187, this Court must evaluate whether Myriad
had sufficient control over the underlying arbitration,
with the opportunity to contest the underlying
judgment, before it is found to be the alter-ego of
Defendant.  <u>See Triplett v. Farmers Ins. Exchange</u>, 24
Cal. App. 4th 1415, 1421 (1994).  Here, Myriad was not a
party to the arbitration involving Defendant, nor did
Myriad even receive notice of the arbitration.
Forester Decl. ¶ 8.  Myriad did not have any of its

representatives at any hearings.  Id.  Although Myriad
appears to have been aware of the arbitration,
awareness is not sufficient to satisfy due process
concerns, especially when Plaintiffs have not met their
initial burden to show that the two corporations are
identical.  See NEC Electronics, Inc. v. Hurt, 208 Cal.
App. 3d 772, 781 (1989).  Finally, the record shows the
arbitration award and judgment were reached by default.
Thus, there was by definition no active defense of the
underlying claim.  As such, the due process concerns
are even greater in the present case.  Motores de
Mexicali, S.A. v. Superior Court, 51 Cal.2d 172, 176
(1958)(declining to add individuals as judgment debtors
to default judgment against bankrupt corporations
because the "litigation was [not] carried through and
subsidized by the dominant corporation.").

        As the Judgment against Defendant was entered by
default, and as this Court has determined that Myriad
does not effectively share the same corporate identity
as Defendant, it cannot be argued that Myriad had the
opportunity to be heard, to present its defenses to
Plaintiffs' claims, or to represent its interests in
the underlying arbitration.  In fact, considering the
different involvement Defendant and Myriad had in
producing the Film, it appears that Defendant and
Myriad would likely have different interests in the
arbitration.  Accordingly, it would violate Myriad's
due process rights to be added as a judgment debtor at

this juncture.  <u>Katzir's</u>, 394 F.3d at 1149-50.
Plaintiffs have failed to meet their burdens in (1)
showing alter ego liability, and (2) showing that
Myriad had control over the proceeding arbitration.  As
such, this Court **DENIES** Plaintiffs' Motion as to
Myriad.

     5.  <u>This Court will not pierce the corporate veil</u>
         <u>to reach D'Amico.</u>

    LMRA § 301 allows liability to be assessed against
a non-signatory under the doctrine of piercing the
corporate veil.  Under this doctrine, if there has been
an abuse of corporate form, shareholders may be held
individually liable for the corporate debts.  <u>Nor-Cal</u>,
48 F.3e at 1475.  In determining whether to pierce the
corporate veil, the court examines three factors: (1)
"the amount of respect given to the separate identity
of the corporation by its shareholders," (2) "the
fraudulent intent of the incorporators," and (3) "the
degree of injustice visited on litigants by recognition
of the corporate entity."  <u>Laborers Clean-Up Contract</u>
<u>Admin. Trust Fund v. Uriarte Clean-Up Service, Inc.</u>,
736 F.2d 516, 524 (9th Cir. 1984).

       a.  *Separate identity of Defendant.*

    This Court finds that D'Amico gave sufficient
respect to the separate identity of Defendant so as to
deny Plaintiffs' request to pierce the corporate veil
and reach D'Amico's assets.  The record shows that
although Defendant was 100% owned by D'Amico, Defendant

was not under his complete control.   In fact, D'Amico
was not the sole officer of Defendant.   "Rather, the
company had three different individuals acting as
officers on its own behalf, in addition to a designated
registered agent as indicated above as well as an
organizer."   D'Amico Decl. ¶ 14.   Further, at all
relevant times, the record shows that D'Amico
personally maintained a separate bank account from
Defendant and did not ever personally advance money or
fund production expenditures to or on behalf of
Defendant.   Id. at ¶ 17.   Additionally, D'Amico
declares "there was never any co-mingling of [his]
personal assets or liabilities with those of
[Defendant] . . . ."   Id. at ¶ 19.

Plaintiffs argue that D'Amico has not respected the
separate corporate identity of Defendant because
D'Amico is Defendant's 100% shareholder, D'Amico signed
all documents submitted to the Guild relating to the
Film, and D'Amico personally tried to talk the Guild
into abandoning their case against Defendant.   While
these allegations are evidenced by Plaintiffs'
supporting declarations, they are insufficient to
warrant the extreme measure of piercing the corporate
veil.   These allegations do not support a finding that
D'Amico disrespected the separateness of Defendant as a
corporate entity.

> b.   *Fraudulent intent of D'Amico.*

Plaintiffs have proffered no evidence that suggests

1  D'Amico had fraudulent intent in its dealings with
2  Defendant.   Plaintiffs merely argue that D'Amico was
3  the publicly credited producer of the Film, yet he
4  never signed papers agreeing to be bound to the Guild's
5  collective bargaining agreement.   Mot. 11:4-10.
6  Plaintiffs maintain, "he created other companies, like
7  Dryad and [Defendant], to be bound by MBA, even when
8  Myriad had control of the literary material.  D'Amico
9  himself refused to provide a personal guarantee to the
10 Guild, likely anticipating the company might later seek
11 to evade them."  Mot. 11:4-10.   While the above facts
12 are evidenced in the record, D'Amico's alleged
13 fraudulent intent is not.   Plaintiffs infer from
14 D'Amico's decision to not sign the collective
15 bargaining agreement that he intended to defraud
16 Plaintiffs, if a dispute were to arise with the Guild,
17 by hiding behind the shield of Defendant corporation.
18 Plaintiffs do not support these inferences with fact or
19 evidence.   Accordingly, this Court finds the record
20 provides no indication of fraudulent intent on behalf
21 of D'Amico.
22          c.   *Degree of injustice to Plaintiffs*
23      While the Court recognizes that Plaintiffs have
24 faced difficulty in collecting on their Judgment
25 against Defendant, it does not follow that this
26 difficulty constitutes an injustice if the Court does
27 not pierce Defendant's corporate veil to reach the
28 assets of D'Amico.   As discussed above, the record

neither shows that D'Amico disrespected the separate corporate identity of Defendant, nor that D'Amico had fraudulent intent, such as to warrant this extreme measure.  Plaintiffs have provided no further examples of injustice they would encounter if this Court were to decline to pierce Defendant's corporate veil.

Upon consideration of the appropriate factors, specifically the amount of respect given to the separate identity of Defendant, D'Amico's fraudulent intent, and injustices Plaintiffs may face, this Court **DENIES** Plaintiffs' Motion as to third party D'Amico.

### III. CONCLUSION

For the reasons stated above, this Court **DENIES** Plaintiffs' Motion to Add Myriad Pictures and Kirk D'Amico as Judgment Debtors [24] in its entirety. **IT IS SO ORDERED.**


DATED: February 9, 2016     /s/ RONALD S.W. LEW
                            **HONORABLE RONALD S.W. LEW**
                            Senior U.S. District Judge